IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

**DONALD BATEMAN, BRIAN CALES,**                                      **PLAINTIFFS**
**WILLIS MARION FOWLER III,**
**CALVIN STOKER, STEVEN TRUITT,**
**JOSH PILLOW, JOSEPH GAUTHIER**
**and JASON CULLUM**


vs.                                   Case No. 6:11-cv-708


**FTS INTERNATIONAL SERVICES, LLC**                              **DEFENDANT**

---

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING LIABILITY AND STATUTE OF LIMITATIONS AND INCORPORATED BRIEF IN SUPPORT

---

### MOTION

---

COME NOW Plaintiffs Donald Bateman, Brian Cales, Willis Marion Fowler, III, Calvin Stoker, Steven Truitt, Josh Pillow, Joseph Gauthier and Jason Cullum ("Plaintiffs"), by and through their attorney Josh Sanford of the Sanford Law Firm, PLLC, and for their Motion for Partial Summary Judgment Regarding Liability and Incorporated Brief in Support, Plaintiffs state and allege as follows:

1.      Plaintiffs file this Motion for Partial Summary Judgment ("Motion"), asking this Court to grant their Motion and to find, order, hold, and decree the following premises as a matter of law in accordance with Rule 56 of the Federal Rules of Civil Procedure:

a.      that Defendant is *prima facie* liable to Plaintiffs for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") because Defendant employed

Plaintiffs and was subject to the FLSA during the applicable statute of limitations period, because Plaintiffs worked more than forty hours per week in at least one work week during their employment with Defendant, and because Defendant failed to pay Plaintiffs an overtime premium of one and one-half times Plaintiffs' regular rate for all hours worked over forty (40) per week;

      b.      that the Administrative, Executive and Professional exemptions from the overtime requirements of the FLSA do not exempt Defendant from paying overtime to Plaintiffs in this case; and

      c.      that Defendant's violations of the FLSA were willful, and therefore, the three-year statute of limitations, instead of the two-year statute of limitations, applies in this case.

WHEREFORE, premises considered, Plaintiffs Donald Bateman, Brian Cales, Willis Marion Fowler, III, Calvin Stoker, Steven Truitt, Josh Pillow, Joseph Gauthier and Jason Cullum, respectfully pray that the Court grant their Motion for Partial Summary Judgment Regarding Liability, for attorneys' fees, costs, and such other relief as provided by law and for such other and further relief as this Court deems necessary, just and proper.

---

## BRIEF IN SUPPORT

---

## I.      STATEMENT OF ISSUES

1.      Whether Defendant is *prima facie* liable to Plaintiffs for unpaid overtime wages under the FLSA;

**Page 2 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

2.	Whether Defendant, who carries the burden of proving the applicability of exemptions under the FLSA, can produce facts from which a reasonable jury could conclude that the FLSA exemptions apply to Plaintiffs in this case, including the Executive, Administrative or and Professional exemptions.

3.	Whether the three-year statute of limitations applies to Plaintiffs' claims on the basis that Defendant's violations of the FLSA were willful as a matter of law.

## II.	TABLE OF CONTENTS

I.	STATEMENT OF ISSUES ............................................................................................2

II.	TABLE OF CONTENTS .............................................................................................3

III.	TABLE OF AUTHORITIES ........................................................................................3

IV.	INTRODUCTION .........................................................................................................4

V.	STANDARD OF REVIEW ..........................................................................................5

VI.	ARGUMENT ................................................................................................................6

   **A.	No Genuine Dispute of Material Fact Exists as to Whether the Provisions of the FLSA Applied to Defendant and Plaintiffs' Employer-Employee Relationship or as to Whether Defendant Committed Prima Facie Violations of the FLSA ......................6**

   **B.	No Reasonable Jury Could Conclude that the FLSA's Overtime Exemptions Apply to Plaintiffs. ......................................................................................................7**

     1. The Executive Exemption Does Not Apply in this Case. ................................................7

     2. The Administrative Exemption Does Not Apply in this Case. .....................................16

     3. The Professional Exemption Does Not Apply in this Case.........................................19

   **C.	The Three Year Statute of Limitations Applies Because Defendant's Violations of the FLSA were Willful as a Matter of Law. ....................................................................23**

VII.	CONCLUSION............................................................................................................24

## III.	TABLE OF AUTHORITIES

**Cases**
Benshoff v. City of Virginia Beach, 180 F.3d 136 (4th Cir 1999) ................................................6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...........................................................................5

Dalheim v. KDFW-TV, 918 F.2d 1220 (5th Cir. 1990) .......................................................17, 19

Esmark Apparel, Inc. v. James, 10 F.3d 1156 (5th Cir. 1994) .....................................................5

**Page 3 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

<u>Hayles v. General Motors Corp.</u>, 82 F. Supp. 2d 650 (S.D. Texas 1999)................................5, 6
<u>Meadowbriar Home for Children, Inc. v. G.B. Gunn</u>, 81 F.3d 521 (5th Cir. 1996)......................6
<u>Mireles v. Frio Foods</u>, No. 89-1076, 1990 U.S. App. LEXIS 25883 (5th Cir. Feb. 12, 1990).....23
<u>Smith v. Frac Tech Servs., LLC</u>, No. 4:09CV00679 JLH, 2011 U.S. Dist. LEXIS 3165 (E.D.
  Ark. Jan. 11, 2011)...................................................................................................passim
<u>Vela v. City of Houston</u>, 276 F.3d 659 (5th Cir. 2001) ............................................................7

**Statutes, Rules, & Regulations**

29 C.F.R. § 541.100 (LEXIS 2014)..............................................................................8, 9
29 C.F.R. § 541.102 (LEXIS 2014).....................................................................................9
29 C.F.R. § 541.105 (LEXIS 2014).....................................................................................9
29 C.F.R. § 541.2 (LEXIS 2014)..........................................................................................8
29 C.F.R. § 541.200 (LEXIS 2014)....................................................................................17
29 C.F.R. § 541.201(a) (LEXIS 2014)...............................................................................17
29 C.F.R. § 541.201(b) (LEXIS 2014)...............................................................................17
29 C.F.R. § 541.202(a) (LEXIS 2014)...............................................................................18
29 C.F.R. § 541.202(b) (LEXIS 2014)...............................................................................18
29 C.F.R. § 541.301(b) (LEXIS 2014)...............................................................................20
29 C.F.R. § 541.301(c) (LEXIS 2014)................................................................................20
29 C.F.R. § 541.301(d) (LEXIS 2014).........................................................................20, 21
29 C.F.R. § 541.301(e)(1) (LEXIS 2014)...........................................................................20
29 C.F.R. § 541.302 (LEXIS 2013)....................................................................................20
29 C.F.R. § 541.303 (LEXIS 2013)....................................................................................20
29 C.F.R. § 541.700(a) (LEXIS 2014).....................................................................8, 13, 14
29 C.F.R. §§ 541.301(a) (LEXIS 2013)..............................................................................20
29 U.S.C.S. § 207 (LEXIS 2014)..........................................................................................6
29 U.S.C.S. § 213(a)(1) (LEXIS 2014).................................................................................7
29 U.S.C.S. § 255(a) (LEXIS 2014) ...................................................................................23
Fed. R. Civ. P. 56..................................................................................................................5

## IV.      INTRODUCTION

Plaintiffs seek to establish, by order of this Court, that Defendant is liable to Plaintiffs for violations of the overtime provisions of the "Fair Labor Standards Act" as a matter of law. The FLSA requires all employers to pay employees one and one-half times the employees' regular rate for all hours worked over forty (40) in each week, absent some valid and factually applicable exemption. This Brief first explains that Defendant is a covered employer under the FLSA, that Plaintiffs were covered employees under the FLSA, and that Defendant failed to pay Plaintiffs one and one-half times Plaintiffs' regular rate for all hours worked over forty (40) in a week.

**Page 4 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

See infra. Section VI.A.  This Brief then explains that no valid and factually applicable exemption exists in this case, and therefore, Defendant is liable to Plaintiffs for violations of the overtime provisions of the FLSA.  See infra. Section VI.B.  This Brief then explains that the three year statute of limitations should apply to Plaintiffs' claims as a matter of law, on the basis that Defendant's violations were willful.  See infra. Section VI.C.

## V.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when there are no genuine issues of material fact remaining in a case and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Hayles v. General Motors Corp., 82 F. Supp. 2d 650, 654 (S.D. Texas 1999).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole."  Celotex, 477 U.S. at 327.

A dispute over a material fact is only genuine if the evidence in the summary judgment record suffices for a reasonable fact-finder to return a verdict in favor of the nonmoving party. Hayles, 82 F. Supp. 2d at 653.  Although the moving party bears the initial responsibility of establishing the basis for its motion, if the nonmoving party will bear the burden of proof on the issue at trial, the burden on the moving party may be discharged by pointing out that there is an absence of evidence to support the nonmoving party's case. Esmark Apparel, Inc. v. James, 10 F.3d 1156, 1160 (5th Cir. 1994).

**Page 5 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

Once the moving party meets its burden, the non-moving party must establish the existence of a genuine issue for trial. Meadowbriar Home for Children, Inc. v. G.B. Gunn, 81 F.3d 521, 533 (5th Cir. 1996). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts;" a scintilla of evidence, conclusory allegations, speculation, and unsubstantiated assertions will not carry this burden. Id.; Hayles, 82 F. Supp. 2d at 654. Further, the non-movant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. Hayles, 82 F. Supp. 2d at 654. Rather, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id.

## VI.      ARGUMENT

### A.      No Genuine Dispute of Material Fact Exists as to Whether the Provisions of the FLSA Applied to Defendant and Plaintiffs' Employer-Employee Relationship or as to Whether Defendant Committed Prima Facie Violations of the FLSA.

The FLSA creates certain financial obligations upon employers such as Defendant, including the requirement that for every hour worked in excess of forty hours per week, the employer must pay a premium rate of one-and-one-half times the employee's normal hourly rate. 29 U.S.C.S. § 207 (LEXIS 2014). Normally, an individual seeking compensation under the FLSA has the burden of establishing that an employer-employee relationship exists. Benshoff v. City of Virginia Beach, 180 F.3d 136, 140 (4th Cir 1999).

Plaintiffs were the employees of Defendant engaged in work covered by the FLSA, and Defendant is subject to the FLSA's requirements. Pls.' Statement of Undisputed Material Facts ("SUMF") ¶¶ 1, 3, 4. Plaintiffs also worked more than forty hours per week on a regular basis, and Defendant did not pay Plaintiffs an overtime premium of one and one-half times their

**Page 6 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

regular rate for all hours over forty.  SUMF ¶¶ 6, 8, 9, 11, 12, 42–46.  Therefore, Defendant is *prima facie* liable to Plaintiffs for unpaid overtime wages and liquidated damages in accordance with the FLSA.

To avoid ultimate liability then, Defendant must prove that a valid overtime exemption applies to each individual Plaintiff.  <u>Vela v. City of Houston</u>, 276 F.3d 659, 666 (5th Cir. 2001) (explaining that employers bear the burden of proving entitlement to an FLSA exemption).

**B.    No Reasonable Jury Could Conclude that the FLSA's Overtime Exemptions Apply to Plaintiffs.**

The previous section established that Defendant is *prima facie* liable to Plaintiffs for unpaid overtime wages.  However, the FLSA allows employers to classify some employees as exempt from the law's overtime protections, including "any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C.S. § 213(a)(1) (LEXIS 2014).  This section establishes that Defendant cannot meet its burden to prove that Plaintiffs were properly classified under any these exemptions.

1.    <u>The Executive Exemption Does Not Apply in this Case.</u>

No reasonable jury could conclude that the Executive Exemption applies to Plaintiffs in this case.  To begin, employers bear the burden of proof to establish entitlement to an FLSA exemption. <u>Vela</u>, 276 F.3d at 666. Exemptions are further narrowly construed against the employer asserting them.  <u>Id</u>.  Also, whether Plaintiffs' duties exclude them from the FLSA's overtime requirements is a question of law.  <u>Icicle Seafoods, Inc. v. Worthington</u>, 475 U.S. 709, 712 (1986).

**Page 7 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

Four requirements must be met in order for an employer to claim the Executive Exemption. The term "employee employed in a bona fide executive capacity" means any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week […], exclusive of board, lodging or other facilities;
(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
(3) Who customarily and regularly directs the work of two or more other employees; and
(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100 (LEXIS 2014). The Executive Exemption test is conjunctive. See id. Employees must meet all of the criteria outlined above for employers to properly classify them as bona fide executives under the regulations. See id. If even one prong of the Executive Exemption is not met, then Plaintiffs do not qualify for the exemption. See id.

The Second Prong of the Executive Exemption requires Defendant to prove that Plaintiffs' "primary duty" was "management." Id. "Primary duty" refers to the "most important duty that the employee performs." 29 C.F.R. § 541.700(a) (LEXIS 2014). Four factors help to determine whether "management" was an employee's most important duty: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. Id. Also, job titles are insufficient to establish exempt status. 29 C.F.R. § 541.2 (LEXIS 2014). Instead, "[t]he exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations." Id.

**Page 8 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

Developing the Second Prong further, Defendant must prove not merely that Plaintiffs had a primary duty, but that their primary duty was performing "management" tasks. 29 C.F.R. § 541.100. "'[M]anagement' [tasks] include[] . . . activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 C.F.R. § 541.102 (LEXIS 2014).

In determining whether an employee meets the Fourth Prong, courts must consider three factors: "[1] whether it is part of the employee's job duties to make such suggestions and recommendations; [2] the frequency with which such suggestions and recommendations are made or requested; and [3] the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105 (LEXIS 2014). Also, although an employee need not be given unfettered discretion or ultimate authority over "changes of status," occasional suggestions and recommendations are not enough. Id.

The case of Smith v. Frac Tech Servs., LLC provides the most applicable example of how the Fourth Prong applies to this case. No. 4:09CV00679 JLH, 2011 U.S. Dist. LEXIS 3165 (E.D. Ark. Jan. 11, 2011). In that case, the court granted the plaintiffs' motion for partial

Page 9 of 25
Donald Bateman, et al. v. FTS International Services, LLC
U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708
Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support

summary judgment as to the class of Field Engineers. See id. at *63–78. Although one Field Engineer admitted that "he might have said to several people, including his boss, that an employee ought to be fired or that Lyons wished an employee would be fired," the court held that this was not enough to satisfy the Fourth Prong. Id. at *67 (discussing Nicholas Lyons's testimony). The court noted that "[t]he standard is not whether the employee occasionally expressed his desire for another employee to be fired but whether the employee's recommendations were given particular weight. 29 C.F.R. § 541.100(a)(4). Occasionally expressing a desire or belief that an employee should be fired does not satisfy this standard." Id. at *67–8.

Additionally, the court carefully pointed out that mere "involvement" in Fourth Prong decisions does not satisfy the requirements of the Fourth Prong. See id. at *68–9 (discussing Dan Quick's testimony). Dan Quick testified that Field Engineers were "involved in" hiring and promotion of employees. Id. Responding to this evidence, the court reiterated that "the standard is not whether the field engineers were 'involved in' the hiring or promotion of employees but whether the field engineers had the power to hire and fire or made recommendations about hiring or promoting employees that were given particular weight." Id. at *69.

In this case, Plaintiff Field Engineers Joseph Gauthier and Willis Fowler ("Field Engineers") do not qualify for the Executive Exemption. Field Engineers did not customarily direct the work of two or more employees as required by the Third Prong of the Executive Exemption. See SUMF ¶ 23. Defendant did not assign anyone else to Field Engineers' chain of command, and Field Engineers did not direct the work of other employees. See SUMF ¶ 23.

Furthermore, Field Engineers' primary duty was not management, as required by the Second Prong. Rather, Field Engineers' primary duty was to monitor and record rates of

Page 10 of 25
Donald Bateman, et al. v. FTS International Services, LLC
U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708
Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support

pressure as the fracking job progressed, conformity to specifications during the job, and completion of post-job reports. See SUMF ¶ 14, 19. Field Engineers *did not* decide the methods of fracking, SUMF ¶ 18; interview or select employees for hiring or firing, SUMF ¶ 20; train employees, SUMF ¶ 21; maintain production or sales records for use in supervision or control, SUMF ¶ 24; evaluate other employees' performance, SUMF ¶ 25; handle employee complaints or grievances, SUMF ¶ 27; discipline employees, SUMF ¶ 28; plan the fracking work or determine the techniques to be used in the fracking process, SUMF ¶ 29; determine the type of materials, supplies, machinery, equipment or tools to be used in the fracking process, SUMF ¶ 30; providing for the safety of the employees or equipment on the job site, SUMF ¶ 31; plan or control the budget, SUMF ¶ 32; or monitor or implement legal compliance measures, SUMF ¶ 33.

Also, Field Engineers lacked significant involvement in personnel decisions as required by the Fourth Prong of the Executive Exemption. Field Engineers did not interview or select employees for hiring or firing. SUMF ¶ 20. They also did not conduct performance evaluations. SUMF ¶ 25. They also did not make recommendations regarding hiring, firing, advancement or promotions. SUMF ¶ 26.

In sum, Field Engineers' primary function was to monitor and record rates of sand, chemicals, water and pressures as the fracking job progressed and to create reports out of the data that they monitored and collected. They were not assigned to customarily direct two or more employees, and they did not participate in or exert any influence over personnel decisions. Therefore, this Court must hold that Field Engineers do not qualify for the Executive Exemption.

Plaintiff Service Supervisors Donald Bateman, Brian Cales, Jason Cullum, Josh Pillow and Calvin Stoker ("Service Supervisors") also do not qualify for the Executive Exemption.

**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

First, the facts show that Service Supervisors did not meet the Fourth Prong of the Executive Exemption. John Russell ("Russell"), Operations Supervisor to Josh Pillow, Jason Cullum, and Calvin Stoker, and Robert Mohnacky ("Mohnacky"), an Operations Supervisor in two different locations operated by Defendant, both testify to the same facts regarding the process of personnel decisions for Defendant. SUMF ¶¶ 47–48. Operations Managers were responsible for hiring, firing, promotions, demotions, and changes in pay, SUMF ¶ 49, and giving suggestions on these issues were not part of Service Supervisors' job duties, SUMF ¶ 50. Russell and Mohnacky also explained both how and why they did not give particular weight to Service Supervisors' suggestions regarding hiring, firing, and changes of status as required by the Fourth Prong of the Executive Exemption. See SUMF ¶¶ 51–55. Russell and Mohnacky both enumerate the specific factors that they considered in determining whether to hire or fire. SUMF ¶¶ 51, 54. They go on to explain that, because Service Supervisors were not trained in the complexities of HR-type decision making, Service Supervisors' suggestions were just not that helpful. SUMF ¶ 52–54. As a general rule then, Russell and Mohnacky did not ask Service Supervisors for suggestions on hiring and firing. SUMF ¶¶ 51–54. Russell and Mohnacky also completed many evaluations on Equipment Operators ("EOs") without input from Service Supervisors. SUMF ¶ 55. In these situations, they completed the evaluations based on their own observations and based on what the EOs told them. SUMF ¶ 55.

The Service Supervisors' testified consistently with Russell's and Mohnacky's statements on their lack of involvement with hiring, firing, and changes of status. Service Supervisors did not hire and fire or give suggestions regarding hiring and firing. SUMF ¶ 57. No one in Bateman's or Cales's crew was even fired. SUMF ¶ 57. Service Supervisors did not give suggestions on promotions, demotions, or raises in pay. SUMF ¶ 58. Although Stoker and

Donald Bateman, et al. v. FTS International Services, LLC
U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708
Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief
in Support

Pillow occasionally gave informal, verbal feedback on newly hired EOs, Service Supervisors did not otherwise give feedback or conduct written evaluations, and no evidence suggests that this verbal feedback had any Fourth Prong effect on such employees. SUMF ¶¶ 58–59. As in <u>Smith</u>, occasional suggestions are not enough. <u>See</u> 2011 U.S. Dist. LEXIS 3165, at * 67–8 (noting that "[o]ccasionally expressing a desire or belief that an employee should be fired does not satisfy [the Fourth Prong] standard").

Service Supervisors also did not have "management" as their "primary duty" as required by the Second Prong. Because of the extremely long hours and because Defendant paid EOs one and one-half times their regular rate, EOs made more money than Service Supervisors. SUMF ¶ 65. Also, Plaintiff Supervisors spent no more than 30% of their time performing management tasks. SUMF ¶ 61 (citing Bateman Dep. 67:16–22 (15%); Cales Dep. 105:10–15 (20–30%); Cullum Dep. 124:3–125:3 (20%)). So the first and second factors weigh against classifying Plaintiffs as exempt. <u>See</u> 29 C.F.R. § 541.700(a) (listing the factors to consider in determining whether "management" is the employee's primary duty).

Service Supervisors spent such little time performing management tasks because they had to do the same physical, non-managerial labor that EOs did, SUMF ¶ 62, and because they were responsible for so few discrete, managerial tasks, SUMF ¶ 63–64. On one hand, short, pre-convoy meetings were handled by some Plaintiff Supervisors, EOs were intermittently coached and counseled on how to run equipment more efficiently and safely and directed to comply with corporate policies on the job (i.e. wearing safety equipment, smoking only in designated areas, sleeping on the job). SUMF ¶ 63. On the other hand, however, Plaintiff Supervisors did not assign employees to run particular machines or equipment; review or grant vacation requests; do formal training; create schedules; plan the work; determine the type of materials, supplies,

**Page 13 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

machinery, equipment, or tools to be used; discipline employees; interview potential employees; or maintain production records; or handle grievances. SUMF ¶ 56, 64. Plaintiff Supervisors also had little freedom from direct supervision and did not "plan the work," because the "company man" remained present on the job site and directed Services Supervisors regarding the methods of fracking the particular well. SUMF ¶ 64; see 29 C.F.R. § 541.700(a) (listing relative freedom from direct supervision as a factor to consider in determining whether Second Prong is satisfied).

Additionally, one particular part of Pillow's deposition testimony, in conjunction with Russell's and Mohnacky's declarations, illustrates just how the importance of physical, non-managerial work outweighed whatever managerial work that the Service Supervisors did. See 29 C.F.R. § 541.700(a) (listing relative importance of managerial work compared to non-managerial work as a factor for determining whether Second Prong is satisfied). When opposing counsel asked if Pillow thought he was a "supervisor," Pillow stated: "To a degree." Pillow Dep. 90:6–13. Opposing counsel then asked Pillow what kind of supervisory responsibility he thought he had, to which Pillow responded:

> Probably for my knowledge of the frac equipment. . . . That means I worked around the equipment for a number of years that if anything was to go wrong on the fly, you could ask me and I could work you through it. So, therefore, I was probably the most knowledgeable on location.

Pillow Dep. 90:14–23. Russell echoed this sentiment when he said that "Service supervisors are basically salaried field hands with more experience than EOs on a broader range of equipment than EOs." Russell Decl. ¶ 16, see also ¶ 19 ("service supervisors were more importantly field hands, so it really was not part of our process to involve them in hiring decisions"). Thus, the relative importance of Plaintiff Supervisors' exempt duties and nonexempt duties weighs in favor of a finding that the Second Prong, and therefore, the Executive Exemption, does not apply.

**Page 14 of 25**
Donald Bateman, et al. v. FTS International Services, LLC
U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

Tellingly, Cales testified that he conducted interviews, wrote evaluations and formal disciplinary write-ups, and recommended discipline at *other* fracking companies. SUMF ¶ 60. However, he did not perform these tasks for Defendant. SUMF ¶ 60.

In sum, Service Supervisors were not on the frac site to make personnel decisions, or to bring the official power of the company on the EOs in the form of evaluations or written disciplinary actions, or to sit back and manage other employees all day. They were on the frac site because they were well experienced in setting up and running frac equipment. Service Supervisors' primary duty was not "management," and they did not give suggestions about hiring, firing, and changes of status that were given particular weight. Therefore, this Court must hold that the Executive Exemption is inapplicable to the Service Supervisors.

Finally, Plaintiff Truitt does not qualify for the Executive Exemption because he does not meet the Fourth Prong. Defendant did not involve Truitt in the hiring process. SUMF ¶ 70. Defendant never asked Truitt for his input on employee evaluations, promotions, or raises, and Defendant never evaluated Truitt on his performance of handling personnel decisions, such as hiring, firing, promotions, demotions, or raises in pay. SUMF ¶ 71. Although Truitt tenuously *assumed* that he had the power to send someone home, Truitt never actually sent anyone home, and Defendant never told him that he had the authority to send someone home. SUMF ¶ 72. Truitt never gave written discipline, never suspended anyone, and never suggested these things to his superiors. SUMF ¶ 73.

Truitt's description of his job duties make it no wonder that he was not involved in hiring, firing, and changes of status. When an oil or gas well owner was ready to frac a well, Truitt would receive a job packet from the Operations Manager. SUMF ¶ 68. This job packet would reflect the Operations Manager's decisions about how much equipment, chemicals, and

**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

manpower to use on a particular frac job. SUMF ¶ 68. The Operations Manager would send the job packet to Truitt, and Truitt would review it. SUMF ¶ 68. Truitt would then meet the company man at the location. SUMF ¶ 68. Truitt would explain to the company man (Defendant's customer) how much equipment, chemicals, and manpower were needed for the job. SUMF ¶ 68. Truitt and the company man would then locate the center of the wellhead and take measurements to mark the locations for equipment. SUMF ¶ 68. They would also take measurements to plan for ingress and egress to the frac site. SUMF ¶ 68. Truitt would then determine a start time, taking into consideration the customer's preference and Frac Tech's availability. SUMF ¶ 68. Truitt would also be present, during this initial meeting at the frac site, to direct drivers where to place equipment, such as fluid tanks and sand containers. SUMF ¶ 68. Truitt performed these tasks for up to four different crews. SUMF ¶ 68. He was not giving suggestions about hiring, firing, promotions, demotions, and changes in pay. SUMF 70–73.

In sum, Truitt was not responsible for hiring or firing or for giving suggestions on hiring, firing, or changes of status. Therefore, this Court must hold that Truitt does not qualify for the Executive Exemption.

        2.    <u>The Administrative Exemption Does Not Apply in this Case.</u>

Plaintiffs also do not qualify for the Administrative Exemption under the FLSA. The term "employee employed in a bona fide administrative capacity" means any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week […], exclusive of board, lodging or other facilities;
(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

**Page 16 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

29 C.F.R. § 541.200 (LEXIS 2014). This test is conjunctive. <u>See</u> <u>id</u>. To qualify as an administrative employee, all three of the above criteria must be met. <u>See</u> <u>id</u>.

To qualify for the administrative exemption an employee's "primary duty" must involve "work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a) (LEXIS 2014). "Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b) (LEXIS 2014).

The thrust of this exemption is corporate level administrative work involving functional areas that apply to and affect the business as a whole. <u>See</u> <u>id</u>.; <u>Smith</u>, 2011 U.S. Dist. LEXIS 3165, at *72. In <u>Smith</u>, the Court held that Field Engineers did not qualify for the Administrative Exemption, holding that "field engineers are directly involved in producing the good or service that is Frac Tech's primary output—well stimulation by means of hydraulic fracturing—rather than general administrative work applicable to the running of ***any*** business." <u>Id</u>. at *71–2. Thus, to qualify for the Administrative Exemption, an employee's primary duty must be to administer "the business affairs of the enterprise" as opposed to "producing of the commodity or commodities, whether goods or services, that the enterprise exists to produc[e] and market." <u>Id</u>. at *93 (citing <u>Dalheim v. KDFW-TV</u>, 918 F.2d 1220, 1230 (5th Cir. 1990)).

**Page 17 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

Furthermore, the exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a) (LEXIS 2014). "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances." 29 C.F.R. § 541.202(b) (LEXIS 2014).

Here, Field Engineers' job duties do not satisfy the Second Prong of the Administrative Exemption because their duties did not relate to the management or general business operations of the employer or the employer's customers. Although much of their work was non-manual, Field Engineers worked out of a van at the location of the gas well that was being fracked, during the entire fracking process of that particular well. See SUMF ¶ 14. They were an integral part of

Page 18 of 25
Donald Bateman, et al. v. FTS International Services, LLC
U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708
Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support

the production of Defendant's "product," which was providing well stimulation services that result in the capture of natural gas.  SUMF ¶ 2, 14; See Smith, 2011 U.S. Dist. LEXIS 3165, at *71 ("Although there is some variation as to how the field engineers described their duties, all of them directly participated in the fracturing jobs, which is Frac Tech's principal service.").  Field Engineers' work had nothing to do with the general functional areas of the business as a whole, but rather, it had everything to do with the individual gas wells on which the Field Engineers' crew was working.  See SUMF ¶ 14, 19, 39–41.  Field Engineers' primary duty, therefore, was to help produce the product "that the enterprise exists to produc[e] and market."  See Smith, 2011 U.S. Dist. LEXIS 3165, at *93 (citing Dalheim, 918 F.2d at 1230).

With respect to the Third Prong, Field Engineers' primary duties also did not include "the exercise of discretion and independent judgment with respect to matters of significance."  Field Engineers exercised no discretion, but rather merely kept accurate records of the production process as it occurred. SUMF ¶¶ 18–19.  Field Engineers could not make decisions after evaluating possible courses of conduct because decisions regarding the job were made by the customer and Plaintiffs could not deviate from customer directives.  SUMF ¶ 18.

In sum, Field Engineers neither performed duties that related to Defendant's general business operations nor did they exercise discretion with respect to matters of significance.  Therefore, this Court must hold that the Administrative Exemption does not apply to Field Engineers.

3.     The Professional Exemption Does Not Apply in this Case.

Field Engineers also do not qualify for the Professional Exemption from overtime. The Professional Exemption encompasses three possible sub-categories of professions:  (1) Learned Professionals, (2) Artistic/Creative Professionals, and (3) Teachers.     See 29 C.F.R.  §§

**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

541.301(a), 541.302, 541.303 (LEXIS 2013). The Learned Professionals Exemption, which is the only remotely applicable professional exemption in this case, requires Defendant to prove all of the following elements:

(1) Field Engineers' primary duty involved work requiring "advanced knowledge";
(2) The advanced knowledge must be in a field of science or learning; and
(3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.300–301.

The phrase "work requiring advanced knowledge" means "work which is <u>predominantly intellectual in character</u>, and which includes work requiring the <u>consistent exercise of discretion and judgment</u>, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b) (LEXIS 2014) (emphasis added).

Also, "[t]he phrase 'field of science or learning' includes the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades . . . ." 29 C.F.R. § 541.301(c) (LEXIS 2014).

Further, "[t]he phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession." 29 C.F.R. § 541.301(d) (LEXIS 2014). The thrust of the Learned Professionals Exemption is that it applies to those who are required to be licensed or certified by a board of other professionals in the field. <u>See</u> 29 C.F.R. § 541.301(e)(1) (LEXIS 2014) ("Learned professionals," provides that <u>registered</u> or <u>certified</u> medical technologists, <u>certified</u> public accountants, <u>registered</u> nurses (but not licensed

**Page 20 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

practical nurses or other similar health care employees), dental hygienists with four academic years of pre-professional and professional study in an accredited college, and <u>certified</u> physician assistants generally meet the duties requirements for the learned professional exemption."). The Learned Professional Exemption "does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." 29 C.F.R. § 541.301(d).

In <u>Smith</u>, the court held that the plaintiff Field Engineers did not meet the Professional Exemption as a matter of law. <u>See</u> <u>Smith</u>, 2011 U.S. Dist. LEXIS 3165, at *73–4. The court noted that "the wide variety of degrees among the field engineers . . . demonstrate that most field engineers have acquired their knowledge by experience, an apprenticeship, or general knowledge rather than by advanced specialized intellectual instruction." <u>See</u> <u>id</u>. at *75. The court also noted that "[b]ecause most of the field engineer plaintiffs do not have an engineering degree or any other degree specific to the job of field engineer, the undisputed facts establish that 'specialized academic training' in engineering or any other field is not 'a standard prerequisite for entrance into the profession.'" <u>See</u> <u>id</u>.

In this case, Field Engineers were not engaged in work requiring advanced knowledge. As discussed already, Field Engineers lacked the authority to exercise discretion and judgment in their jobs. SUMF ¶ 18. Field Engineers could not make decisions after evaluating possible courses of conduct because decisions regarding the job were made by the customer and Plaintiffs could not deviate from customer directives. SUMF ¶ 18. Field Engineer Plaintiffs' did not even use discretion or judgment to cull some data while inputting other data. SUMF ¶ 18. Rather, they simply input all data that was transmitted. SUMF ¶ 18. Also, Field Engineers' jobs were

**Page 21 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

not predominantly intellectual in character, because they were simply responsible for data entry and creating post-stage reports.  SUMF ¶ 19.

Additionally, Plaintiffs' job duties did not require "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  Defendant did not require applicants to have specialized academic training as a prerequisite to being hired as a Field Engineer.  See SUMF ¶ 5.  A high school diploma was enough.  See SUMF ¶ 5.  Fowler held a degree in Industrial Technology, SUMF ¶ 7, while Gauthier held a degree in Mathematics and a minor in Physics, SUMF ¶ 10.  The fact that both Gauthier and Fowler held degrees in two completely different disciplines shows that Defendant required no specialized academic training as a prerequisite to entry into the job of Field Engineer and that they acquired their knowledge of the job by experience.  See SUMF ¶¶ 7, 10.  Further, nothing in the record shows that "Field Engineering" is a profession in which one must be licensed, certified, or registered to practice.  Field Engineers directly testified that they learned to do their jobs by experience, SUMF ¶ 16–17, which alone is enough to obliterate the application of the Professional Exemption, see 29 C.F.R. § 541.301(d) ("Learned Professional Exemption does not apply to occupations in which most employees have acquired their skill by experience").

In sum, Field Engineers did not exercise discretion and judgment, they did not engage in work that was primarily intellectual in character, and no prerequisites to entry into the job of Field Engineer existed.  Therefore, this Court must hold that the Learned Professional Exemption does not apply to Field Engineer Plaintiffs.

**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

**C.    The Three Year Statute of Limitations Applies Because Defendant's Violations of the FLSA were Willful as a Matter of Law.**

The FLSA provides a period of two years "after the cause accrued" in which to file a complaint for unpaid overtime, unless the violations are willful, in which case, the statute of limitations is three years.  29 U.S.C.S. § 255(a) (LEXIS 2014).  An employer's violation of the FLSA is willful if it either knew its conduct violated the FLSA or shows reckless disregard for whether its actions complied with the FLSA.  Mireles v. Frio Foods, No. 89-1076, 1990 U.S. App. LEXIS 25883, at *24 (5th Cir. Feb. 12, 1990).  Simply failing to seek legal advice concerning its pay practice does not evidence a willful violation of the statute. Id.  Nor is a negligent violation of the statute a willful violation.  Id.

At least as to Gauthier, Defendant knew its actions were in violation of the FLSA. SUMF ¶ 79. Other Field Engineers sued Defendant for FLSA overtime violations and won a motion for summary judgment as to liability on January 11, 2011.  See Smith, 2011 U.S. Dist. LEXIS 3165.  Defendant employed Gauthier as a Field Engineer from June 20, 2010, until April 9, 2011.  SUMF ¶ 79.  Yet, Defendant continued paying Gauthier, a Field Engineer, a straight salary without an overtime premium after the Field Engineers in Smith won their motion for summary judgment on January 11, 2011.  SUMF ¶ 79.

In any event, Defendant recklessly disregarded its obligations under the FLSA.  Nothing in the discovery documents exchanged between the parties shows that Defendant conducted any kind of an audit to determine whether its classification of Plaintiffs as exempt complied with the FLSA.  SUMF ¶ 77.  Even for the Service Supervisors, the Smith case should have led Defendant to conduct an internal audit to make sure Defendant was complying with the FLSA.  Had Defendant done so, it would have known that all Plaintiffs, Field Engineers, Service

**Page 23 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

Supervisors, and Field Coordinators, lacked influence regarding hiring, firing, and changes of status. Defendant has produced no documents that would suggest that Defendant gave particular weight to Plaintiffs' suggestions regarding hiring, firing, and changes of status. SUMF ¶ 78. Thus, to the extent that Defendant relied on the Executive Exemption to classify Plaintiffs as exempt, Defendant's decision reflects a reckless disregard for its obligations under the FLSA. Further, an audit of Field Engineer Plaintiffs' job would have further revealed that Field Engineers did not exercise discretion and were not required to have specialized academic training as a prerequisite to being hired as a Field Engineer. To the extent that Defendant relied on the Professional Exemption, therefore, Defendant's decision reflects a reckless disregard for its obligations under the FLSA. Also, the same audit of Field Engineers' duties would have also shown that their job lacked any relationship to Defendant's general business operations. Therefore, to the extent that Defendant relied on the Administrative Exemption, Defendant's decision to pay no overtime premium to Field Engineers reflects a reckless disregard for its obligations under the FLSA.

## VII.        CONCLUSION

In sum, this Court must grant Plaintiffs' Motion for Partial Summary Judgment Regarding Liability. The FLSA covers Defendant as an employer and Plaintiffs as an employee. The FLSA required Defendant to pay Plaintiffs one and one-half times Plaintiffs' regular rate for all hours worked over forty (40) in each week, absent some valid and factually applicable exemption. No exemption applies to Plaintiffs in this case. Therefore, Defendant is liable to Plaintiff for violations of the FLSA.

**Page 24 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**

Respectfully submitted,

**DONALD BATEMAN, BRIAN
CALES, WILLIS MARION FOWLER III,
CALVIN STOKER, STEVEN TRUITT,
JOSH PILLOW, JOSEPH GAUTHIER,
and JASON CULLUM, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
One Financial Center
650 S. Shackleford Road, Suite 400
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

By    /s/ Josh Sanford        
Josh Sanford
Texas Bar No. 24077858
josh@sanfordlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

       I certify that a true and correct copy of the foregoing pleading was filed with CM/ECF on the date imprinted by CM/ECF. CM/ECF will sent notice to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Paul E. Hash, Esq.
Anastasia L. Villescas, Esq.
JACKSON LEWIS LLP
3811 Turtle Creek Boulevard, Suite 500
Dallas, Texas 75219-4497
PHONE: (214) 520-2400
FACSIMILE: (214) 520-2008

/s/ Josh Sanford        
**Josh Sanford**

**Page 25 of 25**
**Donald Bateman, et al. v. FTS International Services, LLC**
**U.S.D.C. (E.D. Tex.) Case No. 6:11-cv-708**
**Plaintiffs' Motion for Partial Summary Judgment Regarding Liability and Statute of Limitations and Incorporated Brief in Support**